(33 App. Div. 261.)

### YOUNG et al. v. STONE.

(Supreme Court, Appellate Division, Third Department. September 13, 1898.)

SHERIFFS—LEVY OF EXECUTION—LIABILITY.

Where property levied on belongs to the execution debtor, the sheriff levying execution thereon is not liable to plaintiff claiming the same, though there was an agreement, unknown to the sheriff, between plaintiff and the execution creditor, whereby the creditor was estopped to question plaintiff's ownership of the property.

Appeal from special term, Broome county.

Action by John R. Young and another against Winfield S. Stone, as sheriff of Broome county. From judgment for plaintiffs, and an order denying a new trial, defendant appeals. Reversed.

Prior to the commencement of this action, the plaintiffs were co-partners in trade, doing business as tobacco merchants in the city of Philadelphia, Pa., and the firm of Scott & Clark were cigar manufacturers in the city of Binghamton, in this state. The plaintiffs sold Scott & Clark leaf tobacco, and in December, 1889, Scott & Clark were indebted to them on account thereof in the sum of about $1,226.24, for which amount Scott & Clark had given them six promissory notes. On the 19th of December, 1889, one of such notes, amounting to $217.78, had matured; and one of the plaintiffs went to the city of Binghamton to see if such claim could be adjusted. The firm of Scott & Clark were at that time indebted to a number of other persons, of which fact the plaintiffs were aware. On the 20th of December, the plaintiffs procured an attachment to be issued in an action founded upon the note which had matured. The grounds stated in the affidavit for the granting of such attachment were that "said defendants [Scott & Clark] are about to dispose of their property with intent to defraud their creditors." The warrant of attachment being procured, one of the plaintiffs, together with their attorney and a deputy sheriff of the county, with such attachment in his possession, went to the place of business of Scott & Clark, and, as the result of negotiations then and there had, the plaintiffs procured a bill of sale, signed by one of the firm of Scott & Clark, in the name and in behalf of Scott & Clark, of all the merchandise and personal property, of every name and nature, belonging to the firm of Scott & Clark, which bill of sale was given in consideration of the indebtedness of Scott & Clark of $1,227, together with $73, costs of the attachment. The bill of sale recites that it is made in consideration of such indebtedness, and to secure the plaintiffs

for the notes given therefor, "and to secure the other creditors that Scott & Clark are owing, and said goods are to be held and collected by said Young & Newman for their purposes and benefit, and to secure other creditors." The notes owing by Scott & Clark to the plaintiffs were surrendered up to Mr. Clark at the time of the execution and delivery of the bill of sale. The keys of the store were delivered to one of the plaintiffs, and he assumed to take possession thereof; made a memoranda of the stock in trade and property in the store. The inventory so taken shows the value of the stock in trade to be $2,140.74. The book accounts amount to about the sum of $3,000.

Among the other creditors of Scott & Clark was one Frank R. Keyes, to whom they were indebted in the sum of $1,527.47. Mr. Keyes commenced an action in the supreme court against Scott & Clark for the above-mentioned sum on the 20th of December, 1889. Scott & Clark appeared separately by attorneys; made offers of judgment, which were accepted. Judgment was thereupon entered, and an execution issued and placed in the hands of the sheriff, the defendant, Stone, in the afternoon of December 20th, and the defendant thereupon levied upon the property of Scott & Clark, and sold the same under such execution, at public sale, to various purchasers. Thereafter the plaintiffs commenced an action against the defendant for conversion, alleging that they (the plaintiffs) "were the owners of, entitled to, and in possession of, certain goods and chattels," as set forth in a schedule attached to the complaint, being the same property that had been conveyed to them by the bill of sale, and the same property sold by the sheriff under his execution. The defendant, in his answer, put in issue the allegation of the plaintiffs' complaint that they were the owners of, entitled to, and in possession of, such goods and chattels, and asserted that he took such property under and by virtue of an execution issued to him out of the supreme court, upon a judgment against the firm of Scott & Clark, rendered in favor of Frank R. Keyes; and further alleged, upon information and belief, that the bill of sale by which the plaintiffs claim title to such property was not made in good faith, but was made for the purpose of removing such property beyond the reach and control of the firm, and depriving the firm thereof, and to hinder, delay, and defraud the creditors of such firm. Upon the trial, the plaintiffs introduced evidence tending to show that, at the time Frank R. Keyes brought his action against the firm of Scott & Clark, an agreement was entered into between the attorney of Mr. Keyes in that action, the attorney of the plaintiffs, and one of the plaintiffs, to the effect that, if the plaintiffs' attorney would procure the consent of defendants Scott & Clark to make an offer of judgment in the Keyes action, he (Mr. Keyes) would not attack the bill of sale given to the plaintiffs, nor their title to the property covered by such bill of sale; that the judgment so obtained should stand behind the plaintiffs' claim, and be satisfied out of what remained after the plaintiffs claim was paid. This evidence was received under the objection and exception of the defendant.

The trial court, after summarizing the plaintiffs' claim as to this agreement, charged the jury as follows: "Now, if an arrangement was made by his agent in which he agreed to confine this bill of sale and contract of sale, and to stand with them for the collection of their debt first, and then he was to take the balance, and that agreement was unviolated by the other side, then it would be, in law, an estoppel; they would be compelled to fulfill that agreement. While they might have gotten a judgment in some other manner, while they might have gotten an offer of judgment from one of the firm, Mr. Scott, they could not have gotten an offer from Mr. Clark, if the plaintiffs' version of this is true, for the purpose of tearing down the bill of sale which he had just made; and they say that that was entered into for the purpose of confirming their title, and the law would not permit a transaction of that character, and they have the use of the very instrument which they had created under this promise to destroy the whole thing. So, gentlemen, if that is the fact, if they have satisfied you that that is the fact in this case, that agreement was a valid one, and the defendant or the judgment creditor in that execution is estopped from attempting to enforce his claim against this estate, or against the co-partnership effects which were

turned over into the hands of the plaintiff by this assignment." This charge was excepted to. The making of this agreement was disputed on the trial. There is no evidence that the defendant was ever notified of any such agreement, and no claim made that he had any knowledge of it prior to the commencement of this action; neither does it appear that he was indemnified by the plaintiffs in the execution. Much evidence was given on both sides touching the validity of the bill of sale to the plaintiffs, and as to whether it was or was not void as against creditors. The jury rendered a verdict against the defendant, and from the judgment entered thereon, and from an order denying a motion for a new trial, this appeal is taken.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Lyon, Painter & Hinman (H. D. Hinman, of counsel), for appellant.
T. B. & L. M. Merchant (T. B. Merchant, of counsel), for respondents.

HERRICK, J. The issue made by the pleadings was whether the plaintiffs were the owners or entitled to the possession of the property levied upon, or whether the conveyance by which they claimed to hold it was one made in fraud of creditors, and that in truth and fact it was still the property of Scott & Clark, the defendants in the execution. If the latter was the fact, then such property is liable to seizure and sale upon execution to satisfy judgment creditors of Scott & Clark, unless such creditors have in some way precluded themselves from resorting to such property, which, for the purpose of this case, we will assume they may do. But this case is not one between the plaintiffs and a judgment creditor of Scott & Clark, but is one between the plaintiffs and the defendant, who was acting as sheriff, under a process issued by a court of competent jurisdiction, regular in form, and without knowledge of the existence of any facts which would preclude or estop the plaintiff in the execution from resorting to the property in question to satisfy his debt. The action is founded upon the alleged personal wrongdoing of the defendant in seizing such property. Whether he was a wrongdoer or not depended upon whether the property he had seized and sold belonged to the defendants in the execution, or to the plaintiffs. The one he was authorized to seize and sell; the other he was not. Upon that question of ownership he took the risk, and acted at his peril, if he made a mistake as to who was in fact the owner. But he did not take the risk of any undisclosed agreement between the plaintiffs and the execution creditor, by which such creditor was estopped from testing the question of ownership, or from resorting to such property to satisfy his execution; and it seems to me that it was error to admit evidence of any such agreement, and that the charge of the trial court in relation thereto was likewise erroneous. It was, in effect, holding him responsible for the wrongful act of another, undisclosed to him, in an action predicated upon his own personal wrongdoing. Such error arises apparently from considering the defendant as standing in the place of the execution creditor, and as his privy or agent, and bound by his acts. Sheriffs and the parties at whose instance process is placed in their hands are not, in the absence of any other, so to speak, incriminating facts, responsible for each other's acts.

It has been repeatedly held that a plaintiff in an execution is not liable in trespass for a wrongful levy by the sheriff, even when his attorney has given specific directions for such levy. Averill v. Williams, 4 Denio, 295; Clark v. Woodruff, 83 N. Y. 518; Welsh v. Cochran, 63 N. Y. 181. A sheriff in executing a process directed to him is not the agent or servant of the party, but is the officer of the court, whose precepts he is under the highest obligation to obey, without question and without hesitation. And of such officer it has been stated that "obedience to all precepts committed to him to be served is the first, second, and third part of his duty; and hence, if they issue from competent authority, and with legal regularity, and so appear upon their face, he is justified for every action of his, within the scope of their command." Conner v. Long, 104 U. S. 228. "As a general rule, the officer is bound only to see that the process which he is called upon to execute is in due and regular form, and issued from a court having jurisdiction of the subject. In such cases he is justified in obeying his precept, and it is highly necessary to the due, prompt, and energetic execution of the commands of the law that he should be so." Wilmarth v. Burt, 7 Metc. (Mass.) 257; Conner v. Long, 104 U. S. 228. And there cannot be that prompt, energetic obedience to its commands if the officer is bound to look beyond and behind the process to ascertain if there are any equities that forbid its issuing, or execution when issued, or, in default of making such inquiries, to act at his peril. The rule that process regular on its face affords protection to the officer executing it has been upheld even where such officer had knowledge of facts rendering the process void. People v. Warren, 5 Hill, 440; Webber v. Gay, 24 Wend. 485; Thomas v. Clapp, 20 Barb. 165; Bullymore v. Cooper, 46 N. Y. 236; Woolsey v. Morris, 96 N. Y. 311.

The case of People v. Warren was where inspectors of election had issued a warrant for the arrest of the defendant for interrupting the proceedings at the election. The defendant resisted the officer, and justified his resistance upon the grounds that he had not heard or been in the presence of the inspectors of election at any time, and that the officer knew it. The court excluded evidence of such facts, and upon appeal the court said:

"The knowledge of the officer that the inspectors had no jurisdiction is not important. He must be governed and is protected by the process, and cannot be affected by anything he has heard or learned out of it."

In the case of Webber v. Gay, speaking of the protection to the officer afforded by the process issued by a justice of the peace, the court said:

"The general rule is, if the justice has jurisdiction of the subject-matter, and if the process is regular upon its face, he is protected. To go beyond this would lead to new and troublesome issues, which would tend to weaken the reasonable protection to a ministerial officer. Their duties are, at best, sufficiently embarrassing and responsible; and to require them to act or not at their peril, as they may be supposed to know or not the technical regularity of the party or magistrate, seems to me an innovation upon previous cases, and against the reason and policy of the rule."

In Chegaray v. Jenkins, 5 N. Y. 376, it was held that a warrant in due form issued to a constable by the receiver of taxes of the city

of New York, directing the collection of a tax, protected the officer executing it, whether the tax was lawfully assessed or not; the court, among other things, saying:

"It was no part of the duty of the defendant, a subordinate officer, to over-rule or to dispute the authority of his superior, unless upon grounds apparent upon the face of their mandate. The law does not give him the means of ascertaining extrinsic facts for this purpose; nor does it attribute to him the capacity for reviewing the assessment on such facts, if they could be ascertained."

The perils of the officer would be much increased, his efficiency impaired, and the prompt and energetic service of process impeded, if not prevented, if, in case of a controverted agreement, or a disputed equity, as in this case, the officer should be compelled to decide between the parties as to who is right before executing the process, and be held to answer in damages as for a wrong if it should finally be determined that he had decided wrong. But in this case we need not go to the extent of holding that the process protects the officer, even although he knows extrinsic facts which render it improper to issue or execute it. There is no pretense here that the defendant had any notice of the agreement relied upon by the plaintiffs. It is the process only, and not the process coupled with a knowledge of extrinsic facts, that we have to deal with here. As he must obey the process if regularly issued, the process is his protection, so long as he acts pursuant to its commands. Process regular on its face, issued by a court or officer having jurisdiction to do so, is a protection to a sheriff for acts done under it. Bullis v. Montgomery, 50 N. Y. 352.

It has been held that an execution regular in form but void in fact, but that did not upon its face convey to the sheriff knowledge of the facts that rendered it void, was a protection to him in making a levy upon property. Hill v. Haynes, 54 N. Y. 153. Not only is a process issued by a court of competent jurisdiction a protection to the sheriff, but it is his duty to act under it. When there is no defect of jurisdiction, neither irregularity nor error in issuing an execution will justify a sheriff in refusing or neglecting to execute it. French v. Willet, 4 Bosw. 649. As to the necessity of acting under process of the court, see, also, Conner v. Long and Wilmarth v. Burt, supra. It has been held that a sheriff, when sued for an escape or as bail, cannot object that the order of arrest was improperly or irregularly granted, or that there was error or irregularity in the judgment or execution. The order of arrest justifies the sheriff in making the arrest, and, unless set aside, justifies the execution. Bensel v. Lynch, 44 N. Y. 162. The officer executing the process is protected, although the party causing it to be issued may not be. A judgment may be void as to the parties, and valid to protect ministerial officers, where the court issuing it had jurisdiction of the subject-matter, and nothing appears on the face of the process to apprise the officer that the court had not also jurisdiction of the person. Welles v. Thornton, 45 Barb. 390. "Where a court issuing a process has general jurisdiction, and the process is regular on its face, the officer is not, though the party may be, affected by an irregularity in the pro-

ceedings. Where a judgment is vacated for an irregularity, the party is liable for the acts done under it; but the officer has a protection by reason of his regular writ." Savacool v. Boughton, 5 Wend. 170. The case last cited is the leading case in this state upon the nonliability of a sheriff for executing a process regular upon its face, and issued by a court of competent jurisdiction, and his nonliability was asserted in that case upon the ground that it was unjust to hold him liable as a trespasser for doing what it was his duty to do, without knowing, or having the means of knowing, whether his process was or was not invalid. Porter v. Purdy, 29 N. Y. 106–113.

If the sheriff will be protected in the execution of process void in fact, or for any reason invalid, because of want of knowledge, how much more should he be protected in the service of process valid in fact, and where the only objection to its execution is an agreement between the plaintiff in the execution and another creditor of the defendant in the execution, of which agreement he is not notified and has no knowledge. There would be no safety for the officer serving process if he were to be held bound by undisclosed agreements or equities between parties, or by the irregular manner in which judgments were obtained. Under the evidence in this case in relation to the agreement by which judgment was obtained, and the charge of the court in relation thereto, the jury might have found a verdict against the defendant without considering the question as to whether the bill of sale, under which the plaintiffs claimed title, in fact gave them any right to the possession of the goods levied upon by the defendant; or they might have found such bill of sale fraudulent and void, and that it conferred no title to the plaintiffs, and still have found a verdict against the defendant. Without considering the other questions in the case, but for the errors in the reception of evidence and in the charge, herein discussed, the judgment and order appealed from should be reversed.

Judgment and order reversed, and a new trial granted, with costs to abide the event. All concur.