BEST MADE CLOTHING CO., INC., Plaintiff, *v.* WARREN J. O'BRIEN, Defendant.

City Court of New York, Kings County, November 25, 1932.

788

*Irving L. Kasofsky* [*Charles Berlin* of counsel], for the plaintiff.

*Earl E. Keyes*, for the defendant.

GOLDSTEIN, J.   The plaintiff is a New Jersey corporation engaged in the business of manufacturing clothing.   The defendant is a marshal of the city of New York.   The Guaranteed To Wear Clothing Shop, Inc., hereinafter referred to as " Guaranteed," is a domestic corporation engaged in the business of selling clothing manufactured by the plaintiff.   In May, 1931, Guaranteed entered into a lease with the Van Co-Berg Corporation for certain premises on Knickerbocker avenue in Brooklyn, N. Y.   Guaranteed failed to pay its rent for the months of December, 1931, and January, 1932, and judgment was thereafter duly entered against Guaranteed on January 20, 1932.   On January 23, 1932, the defendant, under an execution duly issued, levied upon certain goods found by him on the premises of Guaranteed.   The claim is made that this merchandise was not the property of Guaranteed but was the property of the plaintiff, and damages are, therefore, sought for their conversion by the defendant marshal.

Certain facts that appeared at the trial are important and I refer to them briefly.   The plaintiff and Guaranteed are in effect one corporation under two different names.   Their officers are substantially the same as the incorporators and officers of Guaranteed.   Their directors are admitted to be identical.   The stockholders of the two corporations are almost the same and the manager of the store occupied by Guaranteed is the son of the president of the plaintiff.   The main office of both corporations appears to be at the same place and is located in Passaic, N. J.   Guaranteed has had no bank account since its inception, although at one time it maintained three stores in New York city, and did an extensive business.   The accounts and records of both corporations were kept in the same books.   All moneys received by Guaranteed went directly to the plaintiff, which paid all bills of Guaranteed, including rent and the security deposit under the lease.   The plaintiff's bookkeeper kept the books referred to and was paid only by the plaintiff.   The president of Guaranteed received his salary directly from the plaintiff.   The document upon which the plaintiff relies

to establish its title to the merchandise alleged to have been converted by the defendant reads as follows:

"BEST MADE CLOTHING Co. INC.

Manufacturers of

POPULAR PRICED CLOTHING

For Men and Young Men

810–816 MAIN AVENUE.

" PASSAIC, N. J..............193  .

" Agreement made on the 18th day of March, 1931 between Best Made Clothing Co. Inc. and Guaranteed To Wear Clothing Shops, Inc.

" It is understood and agreed that all goods shipped by Best Made Clothing Co. Inc. to the Guaranteed To Wear Clothing Shops, Inc. be on the following terms:

" That it is specifically understood and agreed that said goods are shipped on consignment, and that all of these goods are to remain the property of the Best Made Clothing Co. Inc. until they are fully paid for by the Guaranteed To Wear Clothing Co. Inc. and that the Best Made Clothing Co. Inc. reserve the unconditional right to recall these goods at any time they think it advisable, if goods are not fully paid for.

" GUARANTEED TO WEAR CLOTHING SHOPS, INC.

" By CHAS. SPERBER,

" President."

This paper purports to have been executed by the Guaranteed nine days before that corporation had any legal existence. It was always kept by the Guaranteed at its place of business in Brooklyn. It is of course elementary that Guaranteed could not have executed such an instrument before it had any legal existence. But evidence has been introduced which, the plaintiff urges, shows that that agreement was ratified by the conduct of the parties after the incorporation of Guaranteed. That evidence, however, I consider unworthy of belief. Furthermore, even if it be true that all goods were shipped to the Guaranteed " on memorandum," I nevertheless hold that the invoices and other papers offered at the trial to substantiate a conditional sale or sale " on consignment " were all part of a scheme to defraud creditors. The testimony adduced by the plaintiff was not only contradictory but patently false. The plaintiff should, therefore, be left in the toils of its duplicity. (*American Surety Co.* v. *Conner*, 251 N. Y. 1, 10.)

This case presents a situation typical of many that have sprung up with increasing frequency during the past twenty years. Cases of this kind have necessitated the race between the law and scheming

debtors, constantly seeking means of defrauding creditors within the pale of the law. In the opinion of many, the statutory law of this State finally caught up with them a few years ago (Debtor and Creditor Law, § 270 *et seq.;* Uniform Conditional Sales Act [Pers. Prop. Law], § 60 *et seq.;* Lien Law, § 230-a), although apart from statutes the courts have always frowned upon attempts to defraud creditors. (See *Skilton* v. *Codington,* 185 N. Y. 80, and cases therein collected.) All of these statutes and the decided cases have but one common purpose: to prevent fraud on creditors and to afford prompt relief to the creditors sought to be, or actually, defrauded.

Under the circumstances here disclosed the sale " on consignment " was a conditional sale. (*Smith* v. *Williams,* 90 App. Div. 507; Pers. Prop. Law [Conditional Sales Act], § 61.) · Practically, the line is indeed tenuous between a conditional sale of goods for resale reserving only title in the seller and a chattel mortgage where the mortgagor has the power to sell the merchandise as he sees fit and to retain the proceeds to do with as he sees fit or even to replenish his stock of merchandise after deducting necessary business expenses. Yet, under varying circumstances, the latter arrangement has been held and declared to be fraudulent as to creditors (*Skilton* v. *Codington, supra; Benedict* v. *Ratner,* 268 U. S. 353; Lien Law, § 230-a), while the former has received not only judicial sanction (although the instrument creating the relationship was unfiled) (*Plymouth Rubber Co.* v. *Knott,* 114 Misc. 695), but statutory protection as well (Pers. Prop. Law [Conditional Sales Act], § 69). No practical reason exists for the difference, since one device lends itself as easily to fraud as does the other. The law as it now stands has been justly criticized. (See Glenn Fraudulent Conveyances, § 408.)

But the conclusion here is inescapable that Guaranteed and the plaintiff had conspired and schemed to defraud their creditors even before the business of Guaranteed was begun. It is clear to me that the plaintiff perpetrated a fraud on the judgment creditors, not only when it organized Guaranteed, but when it caused that corporation to sign the lease, to sign the paper dated March 18, 1931, set forth above, and in every detail attending the conduct of the business of Guaranteed. All the acts set forth above were but links in a chain of fraud created by the plaintiff and its *alter ego,* Guaranteed. The merchandise here involved was listed by Guaranteed as its own in its financial statement as of December 31, 1931. In addition to this, the plaintiff made bids for the merchandise levied upon by the marshal at the marshal's sale and raised no objection to the sale proceeding at that time. It is my belief that the instrument dated March 18, 1931, was created for the sole

purpose of defrauding creditors of the plaintiff and Guaranteed, and was so created at a date subsequent to the last delivery of merchandise made by the plaintiff to Guaranteed. The very fact that that instrument was kept in the office of Guaranteed is in itself most significant. What was the need for sending the merchandise " on consignment " if the plaintiff was in effect the same corporation as Guaranteed? Such an arrangement is ordinarily a security device for the protection of a seller who is a stranger to the buyer. The plaintiff was by no means a stranger to Guaranteed. Why, then, was any security necessary? Obviously, the only function of this paper and the organization of Guaranteed, was to defeat the rights of creditors. The intent to hinder, delay and defraud in this case has been established to my complete satisfaction.

Under the circumstances the plaintiff cannot recover. The Debtor and Creditor Law, section 276, provides as follows: " Conveyance made with intent to defraud. Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." Section 270 of the Debtor and Creditor Law defines " conveyance " as " every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance." In my opinion, the instant transaction comes within this definition and, since it was made with actual intent to hinder, delay and defraud, it was void as to creditors and those claiming under them. It follows that the defendant was justified in disregarding the conveyance and in levying upon the merchandise in question. (Debtor and Creditor Law, § 278, subd. b.) It is the fraudulent *intent* that vitiates the transaction and that intent is, of course, a question of fact in each case. (See *Berlenbach* v. *Bischoff*, 137 Misc. 719; affd., 231 App. Div. 734, where a conveyance, although made for a valuable consideration, was nevertheless held void as to creditors because made with intent to defraud.)

Even apart from the statutory enactment, where it is found that an agreement for the sale of merchandise on consignment was executed with intent to defraud creditors, it must be held to be void. In *Frank* v. *Batten* (49 Hun, 91), which presented a similar situation, the court said (at p. 97): " But the defendant insists, and made the point on the trial, that the condition of payment imposed by two of the respective vendors, Frank and Fuller, was colorable only, and was a mere device resorted to by them and the vendee, for the purpose of enabling the latter to keep away his creditors, and hinder and delay them in the collection of their debts, and asked permission to go to the jury on that question, which the court refused;

to which ruling he took an exception. If such was the intention and purpose of the parties, then, as against the defendant, who in this action represents the judgment creditors of the vendee, the condition is not available to the plaintiff, and the title will be deemed to have vested in the vendee. The legal proposition, as thus stated, cannot be disputed." The court continued — and what follows is particularly appropriate here: "We incline to the opinion that a case was made for the consideration of the jury on this question and that they would have been justified in reaching the conclusion that the agreement with the plaintiff, as well as the one made with Fuller, was merely colorable, and the conditions mentioned were inserted in those agreements for the purpose of hindering and delaying the creditors of the purchaser in the collection of their debts." (See, also, *Young* v. *Stone*, 33 App. Div. 261; Williston Cont. § 1739.) Agreements to defraud have always been held to be void and of no effect. (*Materne* v. *Horwitz*, 101 N. Y. 469; *Bowman* v. *McClenahan*, 20 App. Div. 346; *Church* v. *Proctor*, 66 Fed. 240.)

I also find that the proof adduced by the plaintiff is insufficient to show that the particular merchandise levied upon was not paid for by Guaranteed at the time of the levy. Unless the occurrence of this condition was proved, the plaintiff failed to establish a right to the merchandise under its alleged consignment arrangement.

It should be noted that I have reached this conclusion without resorting to the admission contained in the brief filed with me by the plaintiff that it " is consented that all questions that are disputed be resolved in favor of this defendant."

The defendant's motion to strike out the books and records of the plaintiff, upon which decision was reserved, is denied. Judgment is directed for the defendant, with costs.