But this was rejected by the court without argument. It appeared that the plaintiff had received the necessary qualifications about 12 o'clock on the third day of the election, and from the state of the polls, if he had received all the votes taken after that time, he could not have been elected.

VERDICT and judgment for the defendants.

———§———

## GENERAL COURT, (E. S.) APRIL TERM, 1799.

### MONCRIEFF vs. GOLDSBOROUGH.

ASSUMPSIT on a *special agreement* for 1751*l.* current money, for certain lands sold by the plaintiff, and one *Crookshanks*, since deceased, at auction, and struck off to the defendant as the highest bidder, on the 23d of March 1792. The defendant refused to comply with the terms of the sale. The general issue pleaded.

The following facts appeared in evidence: That the plaintiff and *Crookshanks* were appointed trustees by the will of *A. Pattison* to make sale of his real estate. In pursuance of the said power, on the 23d of March 1792, having given public notice, they offered the lands in question at public sale, declaring that from the title papers it appeared that there were 582 acres of land, more or less. That they would not sell it by the acre, but by the quantity more or less; and that they would not warrant any particular quantity. That *Gustavus Scott*, esquire, the adviser and counsel of the plaintiff, bid the sum of 1750*l.* and the defendant bid 1751*l.* The auctioneer bid 1760*l.* That the defendant permitted the last bid to be withdrawn, and the land to be struck off to him as the highest bidder; which was accordingly done. Upon examination of the papers, it appeared by some of them that there was a deficiency of 40 or 50 acres, and that one of the deeds to *Pattison* had not been recorded, although executed according to law. The defendant then refused to comply with the terms of sale; but agreed to submit the case to the chancellor as referee, and for that purpose a statement of facts was reduced to writing and signed by both parties. The chancellor refused to act, and the plaintiff, as survivor of *Crookshanks*, instituted the present action.

It also appeared in evidence, that the defendant was a practising attorney, and had had the title papers in his possession for examination previously to the sale, and had expressed his satisfaction as to the title. That Gus-

APRIL 1799.

Moncrieff
vs.
Goldsborough

*tavus Scott,* esquire, was a by-bidder at the sale, who declared he did not want the land, and advised the defendant to purchase it.

*Martin,* (Attorney General,) *W. B. Martin,* and *Bayly,* for the plaintiff.

*Key* and *Hammond,* for the defendant.

1. The defendant's counsel stated for defence, 1st. That the plaintiff offered the lands for sale to the highest bidder, and stated the quantity to be 582 acres more or less; whereas it appeared by the title papers that there was less. 2d. That there was a by-bidder; and 3d. That there was a defect in the legal title, one of the deeds not having been recorded, which was a concealment of circumstances to deceive the defendant; and as this was an equitable action the plaintiff must come into court with clean hands.

*Key,* for the defendant, made this point to the court: Whether the employment of a by-bidder by the vendor at an auction is not such a fraud as will set aside the sale? He cited *Cowper,* 395; 1 *Esp. N. P.* 15, 16.

CHASE, Ch. J. The court are of opinion, that if the jury shall be of opinion that *Gustavus Scott* was employed by the trustees, or either of them, as a by-bidder at the sale of the lands in question, without his being known by the defendant to be a by-bidder, previous to the lands being knocked down to him; and that *Scott* did bid at the sale with a view to increase the price of the lands for the benefit of the trustees, the sale is void.

2. *Key* then prayed the direction of the court to the jury, that as the testator *A. Pattison,* had only an equitable interest, which was not disclosed by the plaintiff at the time of the sale, the sale was therefore void in law, and ought not to be enforced. He cited 5 *Burr.* 2639. *Pr. Chan.* 575. *Esp.* 115, 11.

CHASE, Ch. J. The court are of opinion, that as *Archibald Pattison* had an equitable title in part of the lands sold, under the deed which was not recorded, it was such an interest that a legal title might be obtained without the land being subject to any debts or incumbrances created by the vendor subsequent to the time of the execution of the deed, and that his title cannot be defeated unless by a conveyance made by the vendor to a purchaser *without notice* of such equitable interest. The remedy is by bill in the court of chancery

for a *specific* execution of the contract, (considering the deed not recorded as such contract.) The court are also of opinion, that if at the time of setting up the lands for sale, as containing 582 acres more or less, the trustees knew the lands were much deficient of that quantity, and did employ a by-bidder to enhance the price of the lands, without his being known by the defendant to be a by-bidder previous to the lands being knocked down to him; and that the by-bidder did bid at the sale with a view to increase the price of the lands for the benefit of the trustees, that the same were conclusive evidence of fraud.

VERDICT and judgment for the plaintiff.

----------※----------

# GENERAL COURT, (E. S.) APRIL TERM, 1799.

## COLSTON vs. DORCHESTER COUNTY COURT.

MOTION for a *mandamus.* The case was as follows, viz. *John Lecompte,* in his life-time, was seised in fee of certain lands in Dorchester county, and by his will divided his lands, devising one part to his son *John* for life, and the other part to his son *James* for life, and died intestate as to the fee after the 1st of January 1788. *John,* the tenant for life, died some time after, leaving children. *Colston* purchased the right of *James* to that part which had been devised to *John,* and obtained a deed for the same, *John,* the original devisor, had but those two children, consequently the part devised to *John* descended by inheritance to *James* and *John's* children, as heirs at law of the original devisor, according to the act of 1786, *ch.* 45. to direct descents. By this act of assembly, if the parties entitled to the intestate's estate cannot agree upon the division thereof, or in case any person entitled to any part be a minor, application may be made to the court of the county where the estate lies, and the court shall appoint, and issue a commission to five discreet, sensible men, to proceed according to the directions of the said act. *Colston* by petition made application to the county court for a commission, according to the *eighth section* of the above act, stating in his petition the manner in which he became entitled to the estate as a purchase from *James Lecompte,* one of the heirs at law of the intestate. The county court refused to grant the prayer of the petition, and dismissed it.

*Martin,* (Attorney General,) and *Bayly,* for *Colston,* moved the court for a *mandamus* to the county court,