BOWMAN v. McCLENAHAN.

(Supreme Court, Appellate Division, First Department. August 4, 1897.)

AUCTION SALE—VALIDITY.
 The employment, by the owner of land put up at auction, of puffers to bid up the price in his behalf, operates as a fraud on the real bidders, and invalidates a sale to a bona fide bidder thus induced to give more for the property.

Appeal from special term, New York county.

Action by Julius Bowman against James McClenahan for specific performance of contract to purchase land. Judgment for defendant. 44 N. Y. Supp. 482. Plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and PARKER, JJ.

E. W. S. Johnston, for appellant.
John Hardy, for respondent.

RUMSEY, J. The action was brought for the specific performance of an alleged contract for the purchase of land made by the defendant. The property consists of a house and lot in West Forty-First street, belonging to the plaintiff. On the 6th day of May, 1896, with other lands belonging to the plaintiff, it was put up to be sold at auction. There were three pieces of land in all, and the one in question was the last of the three to be sold. The first two were bid in for the plaintiff, but the fact that they were so bid in was not made public at the time of the sale. After those two pieces had been struck off, the third piece was put up for sale by the auctioneer. It was started at $13,000, and was bid up to $27,000, at which sum it was struck off to the defendant. How many bidders there were does not precisely appear, nor is it certain who made the last bid before the one at which it was struck off to the defendant. It does appear, however, without contradiction, that one of the sons of the plaintiff, who was present at the sale, bid for the plaintiff upon the property, and that he bid up at least as high as $20,000. As to whether he bid any higher there was a dispute. It was stated by some of the witnesses, and among others by the auctioneer, that the last bid before the one at which the property was struck off to the defendant was made by some one who represented the plaintiff, and in this the auctioneer was corroborated by the defendant, who identified the person making the last bid before the one at which the property was struck off as the son of the plaintiff. This son, however, testified that he did not bid over $20,000. However the fact may be in that regard, it is not to be disputed that bids were made upon this property, by which it was run up to a very substantial extent, in behalf of the plaintiff, and that this was done privately, and without notifying those present at the sale that puffers were to be employed, or that anybody was to bid to represent the owner at the sale. The learned justice before whom this case was tried refused specific performance upon the ground, among others, that, a puffer having been privately employed by the owner to bid upon the property in his behalf, it was a fraud upon real bidders, and that for that reason the purchaser would not be compelled to per-

form his contract. This presents the question whether it is allowable for the owner of property who puts it up at auction to employ privately, and without giving notice of the fact, persons to bid the property up in his behalf; and whether a bidder at such a sale, to whom the property is struck off, will be permitted to refuse to perform his contract upon the sole ground that puffers have been employed. There is no doubt that it is competent for the owner of property who puts it up at auction to use some means to protect his interests, and to see that his property is not sacrificed. It is conceded that he may do this either by fixing a price below which the property shall not be sold, and announcing that at the sale, or by publicly reserving to himself the right to make one or more bids if his interests shall require it. For the owner to protect his interests in this way, giving public notice of the fact that he has done so, certainly does not operate as a fraud upon anybody, for any one who begins to bid with the knowledge that these precautions have been taken upon the part of the owner does so with notice of precisely what he has to meet. But that is a very different thing from giving private instructions to the auctioneer, or from privately procuring one to bid upon the sale in the interest of the owner who is not to buy the property if he should be the highest bidder. The essence of a sale at auction is that the property offered shall go to the highest real bidder. Whenever it is put up, that act constitutes an offer on the part of the owner, through the auctioneer as his agent, to sell to the person who shall bid the highest price for it, and every bid constitutes an offer on the part of the would-be purchaser to take it at the amount of the bid if it shall be struck off to him at that sum. It is well known that bidders at auction sales are influenced to a considerable extent by the number of other bidders, the amounts offered by them, and the apparent anxiety they show to become the owners of the property; and, if these conditions are affected by a private arrangement between the auctioneer and the owner, as the result of which persons who were not in reality intending to buy are allowed to appear as genuine competitors, it holds out to those who are real bidders false inducements, and makes false representations to them as to the desirability of the property, and the demand for it, which in fact operate as a fraud upon them. For this reason it would seem, upon principle, that the private employment of a puffer by an owner at an auction sale rendered the sale void, and relieved the person to whom the property was struck off from the necessity of performing his contract.

Upon authority this question is not entirely free from doubt, although the preponderance both of the cases and of the text writers is in favor of the conclusion reached by the court below. In England for many years the courts of common law and of equity were irreconcilably opposed upon this question. It was held by the courts of common law that the employment of a puffer or by-bidder at an auction sale rendered the sale void, so that the person to whom the property was struck off could not be compelled to perform his contract. The rule was laid down first by Lord Mansfield in the case of Baxwell v. Christie, Cowp. 395, and his judgment in that regard was followed consistently by the courts of common law until the matter was set-

tled by act of parliament. Strangely enough, the courts of chancery in England adopted another and less stringent rule. It was held by these courts, under the lead of Lord Loughborough, in the case of Conolly v. Parsons, 3 Ves. 625, note 1, that the mere employment of a puffer for the purpose solely of protecting the interest of the owner, and not for the purpose of improperly enhancing the price, was legitimate, and would not avoid the sale, although it was done privately, and without notice of the fact being announced. This rule of the court of chancery was followed in that court with more or less hesitation, and the question there remained in dispute until 1867, when it was settled by act of parliament reciting the conflict in the courts of law and equity in regard to the question, and providing substantially that whenever a sale by auction would be invalid by reason of the employment of a puffer the same should be deemed invalid in equity as well as in law. This statute settled the law of England upon that subject, after a conflict of over a hundred years. In this country, while the courts are not unanimous, yet the great weight of authority is in favor of the doctrine announced in the court below. The leading case upon the subject, and one which should be deemed to be conclusive, is the case of Veazie v. Williams, 8 How. 134, in the supreme court of the United States. That was an action brought in equity to rescind a sale at auction for the reason that the purchaser had been defrauded by the employment of a puffer at the sale, and thereby induced to bid much more than the value of the property. The serious question in the case was whether the employment of a puffer invalidated the sale, or entitled the purchaser to relief by having refunded to him the amount of his bid above the value of the property. The case was heard in the First circuit, before Judges Story and Ware, and is reported in 3 Story, at page 611, and Fed. Cas. No. 16,907. There was a difference of opinion between the justices in that court; Judge Story inclining to the opinion that the rule of law was that, although puffers were privately employed by the owner, yet, if there were real bidders as well as sham bidders, and the last bid before the one at which the property was struck off was made by a real bidder, the purchaser was not entitled to relief, and the sale was valid. Judge Ware, the district judge, dissented strongly from this view of the case, and by reason of the disagreement of the judges at the circuit court the case came to the supreme court of the United States. It will be seen that the case was squarely presented, and the supreme court had before it for consideration both views of the law as held by the courts of England. The case was ably argued by the learned counsel, and it received so much consideration that the judges of the supreme court themselves were not able to agree upon a judgment. The majority of the court, however, held that the employment of a puffer operated as a fraud upon the real bidders, and that the plaintiff was entitled to be relieved by a repayment to him of the amount of the money which he had bid over the highest real bid. In that case the highest real bid was $20,000, and the property was struck off to the plaintiff at $40,000, and the owner was compelled to refund to him the difference between the two bids. In view of the circumstances in which this case was presented to the court, it is an authority of great.

weight, and ought to be regarded as settling the question in this coun-
try. In many of the states the same rule has been adopted. In the
state of Pennsylvania there was some fluctuation in the cases, the
supreme court at first holding that the employment of a puffer did not
invalidate the sale if it was done solely with the intent of protecting
the interest of the owner. Steele v. Ellmaker, 11 Serg. & R. 86.
This case, however, was subsequently overruled, and it was held by the
supreme court of that state that the employment even of a single
puffer vitiates the sale (Pennock's Appeal, 14 Pa. St. 446; Staines v.
Shore, 16 Pa. St. 200); and that must be now regarded as the settled
law of that state. The following cases may also be cited as establish-
ing the same rule: Towle v. Leavitt, 23 N. H. 360; Bank v. Sprague,
20 N. J. Eq. 159; Baham v. Bach, 13 La. 287; Smith v. Greenlee, 13
N. C. 126; Moncrieff v. Goldsborough, 4 Har. & McH. 281; Curtis v.
Aspinwall, 114 Mass. 187; Hartwell v. Gurney, 16 R. I. 78, 13 Atl.
113; Peck v. List, 23 W. Va. 338. In the two cases last cited the
authorities are fully collated, and the result seems to be that the rule
stated above is thoroughly established by a great preponderance of
authority in this country. The cases upon the subject are collected in
the third volume of the American & English Encyclopedia of Law,
second edition, at page 504 et seq. The opinion of the text writers
seems to agree with the majority of the authorities. Kent, in his
Commentaries (volume 2, p. 537), while stating that the result of the
authorities perhaps does not sustain the rule laid down by Lord Mans-
field, gives as his own opinion that it is the more just and salutary doc-
trine. In sound policy, he says, no person ought, in any case, to be
employed secretly to bid for the owner against a bona fide bidder at a
public auction. It is a fraud in law on the very face of the transac-
tion; and the owner's interference and right to bid, in order to be ad-
missible, ought to be intimated in the conditions of the sale. Id. p.
539. In Story on Sales, at section 482, it is suggested that the more
stringent rule of Lord Mansfield is the more proper one to apply;
and that, I think, is the conclusion of Sugden in his work on Vendors
(chapter 1, § 2), although he intimates that the English authorities
are the other way, and that the weight of them is in favor of the
chancery rule. Judge Story, in his work on Equity Jurisprudence
(section 293), and Pomeroy, in his work upon the same subject (sec-
tion 934), seem to indicate their preference for the more stringent rule.
In this state there is no authoritative decision upon the subject. In
the case of Hazul v. Dunham, 1 Hall, 655, Recorder Jay, sitting in the
mayor's court of New York, discusses the question, but it was not pre-
sented in that case, and the case itself is not authority. The question
was presented in the case of Fisher v. Hersey, 17 Hun, 370, and the
general term of the Fourth department held that, it appearing that the
plaintiffs were induced by the action of the puffer to bid a higher price
than they otherwise would have given, they were entitled to have
the sale set aside absolutely. The general question was not discussed,
and the court did not attempt to investigate the full extent of the
doctrine. The limited doctrine announced in that case was more than
enough, upon the facts of the case, to warrant the setting aside of the
sale.

Upon a consideration of all the authorities and the text writers, we are of the opinion that the only safe rule is the one announced by Lord Mansfield. It is essential, in sales of this kind, that there should be the utmost good faith, and the employment by the owner of underhand means to enhance the apparent value of his property is not warranted by any principle of sound morality. When it appears that any such steps have been taken by him, it is not necessary for the person insisting upon the invalidity of the sale to show that any harm resulted to him from the improper act. If the fact that no harm resulted is material at all,—and we cannot see how it is so,—the burden of proving it should be upon the person who has employed the puffers to bid up the price of his property. But the sounder rule, as we think, and the only safe rule, to be applied in this transaction, is that a sale at auction must be actually in all cases what it is nominally, an offer by the owner to sell the property to the highest bidder, without any qualification, unless he shall reserve to himself openly at the time of the sale the right to bid upon the property, or shall openly announce a price below which the property shall not be sold. For the reason that puffers are employed upon this sale, we affirm the judgment, without passing upon the other questions decided by the court below or presented by the respondent in his points.

The judgment must be affirmed, with costs to the respondent. All concur.