(57 App. Div. 245.)

SCHMALTZ v. WEED.

(Supreme Court, Appellate Division, Third Department. January 9, 1901.)

1. BREACH OF CONTRACT—FRAUDULENT MISREPRESENTATIONS—EFFECT.

Plaintiff, holding a mortgage prior to defendant's judgments, and being about to sell on foreclosure, agreed with defendant to bid in the premises for an amount not to exceed his judgment, and to pay certain taxes, and to quitclaim the premises to any one defendant should name; defendant agreeing to pay plaintiff the amount of his judgment and taxes paid, by giving a mortgage for $15,000 and the balance in cash, and to protect the premises against foreclosure of certain prior liens, which he agreed should not aggregate more than $40,000. At the time of the contract, plaintiff stated that the prior liens aggregated $43,275, when in fact they were $44,424, and that the taxes were paid, except those provided for in the contract, when in fact other taxes amounting to $614 were due, but the misstatements were not claimed to be intentional. After plaintiff bought in the premises, defendant refused to perform, stating that he had been misled as to the amount of cash necessary to be paid. No request was made that the purchase price to be paid by defendant be reduced. *Held*, in an action for breach of contract, that the erroneous statements furnished grounds, at most, for a claim for a reduction of the purchase price, and not for entire refusal to perform.

2. SAME—EVIDENCE—SUFFICIENCY.

Plaintiff, holding a mortgage on a brewery, prior to defendant's judgments, and about to sell on foreclosure, agreed with defendant to bid in the property, and to make a quitclaim deed of the premises to any one whom defendant should name; defendant to pay a specified consideration therefor. Defendant was informed by plaintiff, in reply to questions, that the brewery was worth $75,000, whereas it was in fact only worth $50,000. Plaintiff had put up the machinery, but resided in another city, and was not familiar with the value of the land. Defendant had visited the property and made loans to the owners, and some months prior to making the contract, without any representations as to value, had offered plaintiff to make an arrangement imposing substantially the same burdens as the contract in suit. After plaintiff bought in the property, defendant refused to accept a deed therefor, alleging fraudulent misrepresentations as to value. *Held*, in an action for breach of contract, that a finding that defendant was induced to enter into the contract by fraudulent misrepresentations of the plaintiff was against the weight of evidence.

3. SAME.

The evidence did not warrant the conclusion that there was any surprise or imposition on defendant by plaintiff's statements of value.

Smith, J., dissenting.

Appeal from trial term, Clinton county.

Action by Hermann Schmaltz against Smith M. Weed. From a judgment in favor of defendant, and from an order denying a new trial, and from an order refusing to correct the findings, decision, and judgment, plaintiff appeals. Reversed.

Argued before PARKER, P. J., and EDWARDS, MERWIN, and SMITH, JJ.

John D. Teller and Charles M. Baker, for appellant.
Weeds, Smith & Conway, for respondent.

MERWIN, J. On July 9, 1892, Clara B. Sutcliffe, then being the owner of the Sutcliffe Brewery property, so called, in the city of Auburn, executed and delivered to the plaintiff a mortgage thereon for the sum of $15,000. There were three prior mortgages,—one to the Rochester Savings Bank, for $20,000 principal; one to the Cayuga County National Bank, for $15,000 principal; and one to Adam C. Wagner for $5,000 principal. On the 29th March, 1894, the plaintiff commenced by action a foreclosure of his mortgage, and on September 4, 1894, obtained a judgment of foreclosure and sale. On the 10th April, 1894, the Rochester Savings Bank commenced a foreclosure of its mortgage,—it being the first lien,—and on the 4th September, 1894, obtained a judgment of foreclosure and sale. The defendant here was a party defendant in each of the foreclosure actions, and appeared therein. He had recovered judgments to the amount of about $6,700, which were liens subsequent to all the mortgages. A sale upon the plaintiff's judgment was advertised for November 19, 1894. Pending this, and on November 7, 1894, the plaintiff and defendant entered into a written agreement in and by which the plaintiff agreed that upon the sale upon his judgment he would bid in the premises, provided no other person should upon the sale bid more than the amount of the judgment and the costs and expenses of the sale, including all taxes, assessments, and water rates which were liens at the time of sale, and would obtain a confirmation of the sale and judgment for deficiency; that within 10 days after the confirmation of the sale he would execute and deliver to the defendant, or to a person or corporation to be designated by him, a quitclaim deed of the premises, subject to the liens thereon prior to his (the plaintiff's) judgment, and would also execute and deliver to the defendant, or the party he designated, any judgment he might obtain for a deficiency. The defendant agreed that upon the delivery of such deed and assignment he would pay to the plaintiff the amount of his judgment and interest, and the costs and expenses of the sale, including taxes, assessments, and water rates, which were liens at the time of the sale. by giving him a new bond and mortgage for $15,000, and paying the balance in cash; the bond and mortgage to be payable in two years, and to be guarantied by the defendant. The defendant also agreed that the mortgages prior to the new mortgage should not exceed in the aggregate the sum of $40,000, and that he would not suffer a foreclosure sale to take place upon any mortgage prior to the one upon which the plaintiff had judgment, and would not suffer any such sale

upon any mortgage prior to such new mortgage until such new mort-gage should be fully paid. The sale occurred, as advertised, under the plaintiff's judgment, and the plaintiff bid in the property, receiv-ing a deed therefor dated November 21, 1894. The sale was duly confirmed and a judgment for deficiency entered December 10, 1894. The defendant afterwards named Frank Walling as the party to whom the deed and assignment should run, and the plaintiff executed the same in proper form. On 2d January, 1895, the parties met by ap-pointment in New York City, and the plaintiff tendered the deed and assignment, and called on the defendant to perform. He declined to do so, saying, as he testifies, that he had been deceived as to the value of the property and the amount to be paid. · He said, according to the evidence of the plaintiff and Mr. Baker, his attorney, that he did not consider himself liable; that it was going to cost him more than he expected to carry the thing out. Upon February 27, 1895, a sale oc-curred upon the foreclosure judgment of the Rochester Savings Bank, and the property was bid in by the owners of the Cayuga Bank mort-gage for about the amount of the judgment and expenses of sale. In September, 1895, this action was commenced to recover of the defend-ant, under the contract, the amount of plaintiff's judgment on the foreclosure. See Schmaltz v. Weed, 27 App. Div. 309, 50 N. Y. Supp. 168. In defense the defendant alleged that, upon the making of the contract, false statements as to the amount of the prior liens and as to the value of the property were made by the plaintiff or his attorney, by which the defendant was deceived and misled, and induced to enter into the contract; that fraud and deceit were practiced upon him by the plaintiff and those acting for and with him. In the decision made by the trial court it is stated that the issues in the action are decided in favor of the defendant upon the ground that the defendant was induced to enter into the contract by false and fraudulent repre-sentations as to the material facts, and by misrepresentations and misstatements as to such facts made by the plaintiff to the defendant. The transaction, during which, as claimed by the defendant, the repre-sentations complained of were made, took place at the office of defend-ant in New York City. Besides the defendant there were present the plaintiff and his attorney, Mr. Baker, and also Mr. Jones and Mr. Bixby, concerning whom the defendant testified that "they were the parties to be benefited, and incidentally it would benefit me." Mr. Jones had been connected with the property since January, 1892, at which time he became the assignee of William Sutcliffe, the then owner, under a general assignment. On 28th February, 1894, Jones and Bixby were appointed receivers of the Sutcliffe Brewing Company, the then owner of the property, and as such receivers they had pos-session of the property from about that time until after the transac-tion in question. Mr. Bixby was an attorney and acted for the de-fendant in the final preparation of the agreement. The representa-tions as to the amount of the prior liens related first to one item of $614 for city taxes, and then to the amounts unpaid on the three prior mortgages. There is no claim of any misstatement as to the amount of plaintiff's judgment. The item for taxes was supposed by all parties to have been paid. The defendant testifies that Baker said

the taxes were all paid, and that Bixby and Jones corroborated the statement.  Baker testifies that in making the statement he said he had been so informed by the city treasurer, and as to this he is not disputed.  As to the amounts of the prior mortgages, defendant testifies that Baker said the amount of the Rochester Savings Bank mortgage was $22,000, when it was in fact $22,240;  that the Cayuga Bank mortgage was $15,900, when in fact it was $16,634;  that the Wagner mortgage was $5,375, when in fact it was $5,550;  that Bixby and Jones agreed with Baker as to the figures;  that he, the defendant, made in the presence of the parties, and read over to them, a memorandum of the amounts given, then added the sum of $150 for things that they may have forgotten, making a total of $5,497.79, over and above the principal of the three prior mortgages and the new mortgage to · be given, and then said to the plaintiff that if he (defendant) made the contract he understood that there is to be but $5,500 to pay over and above the principal of the mortgages;  and that they all agreed to it. Baker testifies that he only stated what he understood to be the real facts, and that there was no agreement fixing the amount.  Bixby and Jones were not sworn.  No amount is fixed in the agreement.  It is hardly claimed that there was any intentional misstatement by the plaintiff or Baker as to the amounts of the liens.  Evidently the amounts were to some extent estimated.  The amounts paid by the mortgagees for insurance were not fully known.  Bixby and Jones, as receivers in possession of the property since the February previous, and in whose interest defendant was acting, had presumptively greater means of knowledge on the subject than the plaintiff or Baker.  The defendant was a party in the foreclosure action of the Rochester Savings Bank, and had appeared therein by attorney.

It seems to me to be quite clear that as to these amounts there was, at most, a mistake, for which a complete remedy would be afforded by a reduction of the amount of the purchase money, and would not furnish a defense to the entire contract.  Besides, the defendant testifies that he would not have performed the contract, even though the plaintiff had reduced the amount to that which he supposed he was to pay.  Evidently, then, the main question is whether there was any such misrepresentation as to the value of the property as would justify the defendant in his refusal to perform.  The trial court found, upon conflicting evidence, that the value of the property on November 7, 1894, was $50,000.  The defendant testified that he asked the plaintiff what the brewery was worth, and whether it was properly constructed, and that the plaintiff replied it was worth $75,000, and was properly constructed.  The plaintiff testified that he told the defendant he always considered the brewery worth $75,000.  The defendant claims he had a right to rely on plaintiff's statement of value.  No question is made about the construction.  The plaintiff lived in the city of Philadelphia, and was a mechanical engineer in the employ of a Mr. Ott, who manufactured brewery outfits.  In the spring of 1891 plaintiff went to Auburn for his employer, and made with Mr. Sutcliffe, the then owner of the brewery property, a contract to furnish and place in the brewery a quantity of machinery.  He afterwards superintended the work, going to Auburn several times, and staying a day or

two at a time. The work was completed in 1891, and the mortgage to plaintiff was mainly for the price. The plaintiff knew the value of the machinery, and was familiar with the cost of buildings like those at that brewery. He knew nothing of the value of land at Auburn. He was not a practical brewer. The defendant in the fall of 1892 or spring of 1893 was at Auburn, and went through the property, and after that made loans to Jones and Bixby, or to the corporation, the Sutcliffe Brewery Company, which was formed by Jones and Bixby in July, 1892, and operated the brewery until February, 1894. The defendant had discussed with Jones and Bixby the subject of the value of the property, and advised with them at the time the contract was executed. In May, 1894, the defendant, through his attorney, for the purpose of controlling the sale under plaintiff's mortgage, had proposed to the plaintiff to enter into a written contract by which, in substance, he would become bound to guaranty that the property on the sale would bring enough to pay the plaintiff in full. There were then no representations asked or given by the plaintiff. The property was then in the hands of the receivers. The contract in question did not impose, in substance, any greater burdens on the defendant than he offered to assume the May previous. His offer in May is significant on the question whether any representations made on the execution of the contract in November had any material or controlling effect upon the action of the defendant. It would seem from the undisputed evidence that the defendant had as good an opportunity as the plaintiff to ascertain the value of the property as a whole, and had at least equal means of knowledge on the subject. Nothing was done by the plaintiff to prevent inquiry, nor is it apparent that the defendant was induced to forbear making inquiries by reason of anything the plaintiff said. Under the rules laid down by the courts on this subject (Simar v. Canaday, 53 N. Y. 298, 306; Chrysler v. Canaday, 90 N. Y. 272, 273; People v. Peckens, 153 N. Y. 576, 591, 47 N. E. 883), and in view of the proper evidential effect to be given to the surrounding circumstances, the finding of the trial court, in effect, that the defendant was induced to make the contract in question by fraudulent representations made by the plaintiff, is against the weight of the evidence. The burden of proof was on the defendant. Nor does the evidence warrant the conclusion that there was any surprise or imposition upon the defendant by reason of any statements made by the plaintiff as to value. Story, Eq. Jur. § 193. If these views are correct, a new trial must follow. It is, therefore, not necessary to consider the appeal from the order denying the motion to correct the decision and judgment.

Judgment and order denying motion for a new trial reversed on the facts, and new trial granted, with costs to appellant to abide the event. Appeal from order denying motion to correct decision and judgment dismissed. All concur, except SMITH, J., who dissents.