OPINION OF THE COURT
Meyer, J.
Absent any evidence of hardship upon the seller of real estate resulting from his negligent mistake, or of knowledge or reason to know of the mistake on the part of the purchaser, it is an abuse of discretion as a matter of law to deny specific performance to the purchaser and dismiss the complaint. The order of the Appellate Division should, therefore, be reversed and the judgment of Special Term awarding plaintiff specific performance should be reinstated, with costs.
The action arises out of the execution on August 29,1978 of a binder under which plaintiff agreed to purchase and defendants to sell an apartment building for $641,000. The binder provided that the purchaser was to take subject to a first mortgage of $335,000 bearing interest of 9½ % [1] a second mortgage of $116,000 bearing interest of 8½% per *546 annum payable $17,448 annually, principal due 1988,[2] and by purchaser executing a purchase money third mortgage of $90,000 bearing interest of 8%% per annum payable $13,-390.56 annually, principal due 1985. The balance of $100,-000 was to be paid in cash, $1,000 on signing the binder, $9,000 additional on signing the formal contract, and $90,-000 at title closing.
No formal contract was ever signed because in preparing the contract the sellers’ attorney brought to their attention the provision in an unrecorded agreement extending the second mortgage under which sale by the mortgagors of the premises within five years from July 15, 1976 accelerated the entire balance. The extension agreement had been signed July 26, 1976, two years and one month prior to the execution of the binder and the acceleration clause was added to the printed extension agreement as a typewritten provision which appeared on the signature page. There was testimony that the mortgagees agreed to waive the acceleration provision upon a principal payment of $22,000, of which the purchaser agreed to pay $10,000, but that defendants refused to pay any part of such sum. The contract closing therefore aborted and the present action for specific performance was begun by the purchaser, who filed a notice of pendency.
The sellers’ answer set forth defenses of Statute of Frauds, mutual mistake and fraud.[3] The Trial Judge held that the binder contained all essential terms and, therefore, constituted a valid contract; that there was no fraud on the part of the purchaser; that defendants had failed to demonstrate mutual mistake, since the purchaser was not aware of *547 the acceleration provision; and that, absent proof of fraud on the part of plaintiff, defendants’ unilateral mistake of which the purchaser had no knowledge and which resulted from the negligence of defendants constituted an insufficient basis for rescission. He, therefore, awarded judgment of specific performance to plaintiff.
The Appellate Division agreed with the trial court’s conclusion that the binder constituted a sufficient contract, but reversed, nevertheless, and dismissed the complaint because the “binder agreement was based on the mistaken belief by both sides that the $116,000 mortgage would remain in effect”; there was no fraudulent intent on the part of the sellers; and their forgetfulness did not call for the drastic remedy sought by plaintiff since rescission would place plaintiff in status quo ante.
The Trial Judge concluded that the mistake was “the result of the defendants’ negligence”, they having executed the extension agreement and it having been in their possession since July 26, 1976. The Appellate Division found that the mistake was “due to the unawareness or forgetfulness” of defendants. The Appellate Division and the Trial Judge having disagreed in their findings of fact and in consequence on the appropriateness of granting the discretionary remedy of specific performance, our court has the power to review the facts and the exercise of discretion (CPLR 5501, subd [b]; Matter of Ray A. M., 37 NY2d 619, 622). Furthermore, the grant or denial of specific performance is a matter of sound judicial discretion, “not an arbitrary or capricious one, depending upon the mere pleasure of the court, but one which is controlled by the established doctrines and settled principles of equity” (Willard v Tayloe, 8 Wall [75 US] 557, 567; accord Hammer v Michael, 243 NY 445, 449; Phalen v United States Trust Co., 186 NY 178, 182). Since this is not a situation in which “there are no ‘as matter of law’ requirements one way or the other” (Vanderbilt v Vanderbilt, 1 NY2d 342, 353), denial of specific performance would constitute an abuse of discretion as a matter of law if there is no evidence to sustain the conclusion that requiring it would be a “drastic” or harsh remedy (Hammer v Michael, supra; cf. Patron v Patron, 40 NY2d 582; *548 see Siegel, New York Practice, § 529; Cohen and Karger, Powers of the New York Court of Appeals, §§ 157, 158). For the reasons hereafter stated we conclude that the weight of the evidence supports the findings of the Trial Judge and that there is no evidence to support the Appellate Division’s conclusion that granting specific performance would be harsh. Moreover, though the rules of law governing mistake as related to specific performance differ from those governing rescission for mistake (see Kleinberg v Ratett, 252 NY 236, 240), we conclude that on this record it was error for the Appellate Division to dismiss the complaint and thus, in effect, grant rescission.
Specific performance may be denied for mistake even though the mistake is the defendant’s own act or omission for which plaintiff is not in the least responsible (Kleinberg v Ratett, supra; Gordon v Mazur, 284 App Div 289, affd 308 NY 861; Covart v Johnston, 61 Hun 622 [opn at 15 NYS 785], affd 137 NY 560; Bowman v McClenahan, 19 Misc 438, affd without reaching issue 20 App Div 346; see Willard v Tayloe, 8 Wall [75 US] 557, supra; Pomeroy, Specific Performance of Contracts [3d ed], § 245, p 592). However, when the mistake is the result of defendant’s own carelessness, not contributed to by conduct of the plaintiff, specific performance will be denied only in a case “of considerable hardship, or * * * when plaintiff must himself have been aware of the mistake” (Pomeroy, op. cit., at p 595; see, also, 11 Williston, Contracts [3d ed], § 1427, p 858; Patterson, Equitable Relief for Unilateral Mistake, 28 Col L Rev 859, 899-900). Thus, in Kleinberg, a purchaser of real estate who was unaware of the presence of an underground stream was held not entitled to rescind the contract, there having been no fraud or deceit on the seller’s part, but the seller’s counterclaim for specific performance was denied because the seller was aware of the stream and “great hardship will result if the contract be specifically enforced” (252 NY, at p 240). Similarly, specific performance was denied, because of the hardship that would result, in Bowman, against a purchaser who bought for immediate use without knowledge that the sale was subject to an unexpired lease and in Covart because of the difference in value between *549 what the contract wording included and what the seller believed was included. Nor is the dictum in McClure v Rignanese (25 AD2d 565),[4] upon which defendants so heavily rely, to the contrary, for the difference in interest rate payable on the mortgage the plaintiff purchaser in that case would have assumed would have materially and adversely affected the economic consequences of the transaction for the defendant sellers.
The record in this case contains no evidence from which it could be concluded that defendants would suffer hardship or adverse economic consequences from enforcement of the binder. To the contrary, defendants’ willingness to accept a purchase money third mortgage at 8% % establishes that 8% % is a fair return for the somewhat more secure second mortgage. Requiring defendants specifically to perform would, unless the second mortgagee waived the acceleration provision, require defendants to pay the mortgagees but would not terminate plaintiff’s obligation to take subject either to the existing second mortgage after assignment to defendants or to a new second mortgage of the same terms. That defendants would have to raise the cash to pay the present holders of the second mortgage is not per se such a hardship as to mandate denial of specific performance (see Turner v Washington Realty Co., 128 SC 271, 277). Defendants would still receive for their apartment house the exact consideration for which they bargained and would be compensated for having to finance the additional $116,000 they would be required to advance at the same 8% % interest rate they had acknowledged, by agreeing to accept a third mortgage bearing the same rate, to be a fair return on their money (see Schmaltz v Weed, 57 App Div 245, 251). It is, of course, conceivable that defendants’ financial position might so far affect the interest rate on, or maturity date of, funds they had to borrow to satisfy the holders of the existing $116,000 second mortgage as to make it a hardship for them to accept from plaintiff a second mortgage with the interest rate or maturity date of that mortgage. There *550 is, however, nothing in the record to suggest that this is the case.[5] Conceivably also a rising market may have increased the value of the property, but “subsequent fluctuations in the value of property * * * are not allowed to prevent * * * specific enforcement” (Willard v Tayloe, 8 Wall, at p 571, supra; see 11 Williston, Contracts [3d ed], § 1425, p 833). There is, therefore, no evidence that hardship would be visited upon the defendants by requiring them to complete the sale on the terms contracted for.
The Trial Judge found that the extension agreement in which the acceleration clause appeared was unrecorded and that “plaintiff had no way of uncovering” defendants’ mistake, the agreement having been in defendants’ possession from the date of its execution, and the Appellate Division made no contrary finding. There being no other evidence of hardship and an affirmative finding that plaintiff neither knew nor had reason to know of defendants’ mistake, the grant or denial of specific performance turns, under the rules stated above, on whether the mistake resulted from negligence on defendants’ part as the Trial Judge found or on unawareness or forgetfulness as the Appellate Division found.
Our review of the record leads us to conclude that the weight of the evidence is with the Trial Judge’s finding. Both partners, Partridge and Musso, signed the binder and both signed the extension agreement. A period slightly in excess of two years elapsed between the signing of the two documents. Furthermore, the acceleration clause appears on the same page as and within two inches of the signature lines and is the last typewritten clause on the page. Under long accepted principles one who signs a document is, absent fraud or other wrongful act of the other contracting party, bound by its contents (Florence v Merchants Cent. Alarm Co., 51 NY2d 793, 795; Pimpinello v Swift & Co., 253 NY 159; Johns-Manville Sales Corp. v Stone, 5 AD2d 110,114; see Hayward v Wemple, 152 App Div 195, affd 206 NY 692). Thus, both defendants are chargeable with knowledge of the existence of the acceleration clause. Moreover, *551 the agreement being in their possession, they had the means of ascertaining the true facts. Yet only one of the partners, Partridge, testified and his only testimony on the question was that he first discovered the acceleration clause when it was brought to his attention by his attorney at the aborted contract closing. Gryme's v Sanders (93 US 55, 61) teaches that “Mistake, to be available in equity, must not have arisen from negligence, where the means of knowledge were easily accessible.” On the record before us we conclude that defendants were legally, if not factually, aware of the existence of the clause and that their mistake resulted from their negligence in failing to take the means readily accessible of checking the second mortgage documents (cf. Libby, McNeill & Libby v Bush Term. Bldg. Co., 121 Misc 228, mod 208 App Div 713; Turner v Washington Realty Co., 128 SC 271, 276, supra; Bibber v Carville, 101 Me 59) .[6]
It was error also to dismiss the complaint and thus, in effect, by foreclosing plaintiff’s recovery of damages (demanded as an alternative remedy in the complaint), to grant defendants rescission. Defendants’ answer contained no counterclaim for rescission nor was it amended by any motion before or during trial. More importantly, however, the evidence presented did not authorize rescission.
The Trial Judge found that the “mistake was, if anything, unilateral”; the Appellate Division characterized it as a “mistaken belief by both sides.” The confusion resulting from the unilaterial/mutual dichotomy has been the subject of much comment (Ricketts v Pennsylvania R. R. Co., 153 F2d 757, 760 [Frank, J., concurring]; Newman, Relief for Mistake in Contracting, 54 Cornell L Rev 232; Rabin, A Proposed Black-Letter Rule Concerning Mistaken Assumptions in Bargain Transactions, 45 Tex L Rev 1273; Patterson, Equitable Relief for Unilateral Mistake, 28 Col L Rev 859, 899-900; Restatement, Contracts 2d [Tent Draft No. 10], p 7 [Reporter’s Note]), and it can be argued that the distinction should be abandoned (compare Restatement, *552 Contracts 2d [Tent Draft No. 10], § 294, with § 295). But whether the mistake be of one or both parties, the law is that rescission is proper only when “the mistake is so material that we can see it goes to the foundation of the agreeemnt” (Belknap v Sealey, 14 NY 143, 155; accord Dambmann v Schulting, 75 NY 55, 64; Restatement, Contracts, § 502; Restatement, Contracts 2d [Tent Draft No. 10], §§ 294, 295). Comment a to section 294 of the Restatement, 2d, makes clear that: “Relief is only appropriate in exceptional situations, where a mistake of both parties upsets the very basis for the contract in such a way as to have a material effect on the agreed exchange of performances,” and Comment b to section 295 notes that the same requirements apply when a party seeks to avoid a contract “for a mistake that he alone made”. But, as already discussed above, defendants’ mistake had no effect upon the agreed exchange of performance, for defendants will receive neither more nor less than that for which they bargained with plaintiff. An additional reason for denial of rescission is our conclusion, noted above, that defendants were negligent in failing to check the extension agreement, negligence being a bar to rescission (Bailey Ford v Bailey, 55 AD2d 729; see Kleinberg v Ratett, 252 NY 236, supra; cf. Bowman v McClenahan, 19 Misc 438, 439, affd without reaching issue 20 App Div 346, supra; Restatement, Contracts 2d [Tent Draft No. 10], § 299, and Comment b; 11 Williston, op. cit., § 1596).
There being neither ground for denial of specific performance nor for rescission, the order of the Appellate Division should be reversed, with costs, and the judgment of specific performance should be reinstated.[7]
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order reversed, with costs, and the judgment of Supreme Court, Queens County, reinstated.

. The other terms of the first mortgage are irrelevant to decision of this case.

. The 1988 date is erroneous; the mortgage provided that any principal balance and interest remaining unpaid on April 1, 1986 would be due on that date. The discrepancy is irrelevant, however, in light of the conclusion concerning the acceleration provision reached, in this opinion. A further reason for according it no significance is that mathematical calculation based upon the interest rate and annual payment provided for establishes that by April 1, 1986 the entire principal and interest will have been paid.

. A counterclaim based on plaintiff’s filing of a notice of pendency was also alleged. The counterclaim was dismissed on plaintiff’s motion for summary judgment and defendants’ appeal from that order was dismissed (70 AD2d 650). The matter went to trial, therefore, only on the complaint and the defenses.

. The holding of the case was that the binder contained only a provision that made the sale contingent upon the buyer’s ability to assume the misdescribed mortgage, not a promise by defendant to convey subject to that mortgage.

. Indeed, the contrary is suggested by plaintiff’s testimony, concurred in by defendants, that the second mortgagees were prepared to waive the acceleration provision upon reduction of the mortgage by $22,000.

. To be distinguished is the situation in JNA Realty Corp. v Cross Bay Chelsea (42 NY2d 392), in which we held that equity would not permit a landlord to forfeit a long term lease in which the tenant had made substantial investment, because of the forgetfulness of the tenant in exercising an option to renew.

. Ironically, the acceleration clause having expired by its own terms on July 15, 1981, plaintiff will take under the judgment subject to the existing second mortgage with appropriate adjustment at the closing for interest and principal paid by defendants on that mortgage while this matter was proceeding through the courts.