VENSKE *v.* SMITH.

1. COMPROMISE AND SETTLEMENT—FRAUD—EVIDENCE.

Settlement agreement *held,* to have been induced by fraud where evidence shows that subsequent to bringing suit to have conveyances of real estate set aside for fraud in obtaining plaintiffs' property and converting proceeds to individual defendant's own use, he agreed to convey certain property to plaintiffs in settlement of suit and they agreed to accept same after he had brought to their attention that a third party wanted and was able to buy said property and, as soon as settlement was consummated, third party vanished, thereby disclosing the fraud.

2. SAME—FRAUD—RES JUDICATA.

Settlement of suit to have conveyances of real estate set aside for fraud, itself procured by fraudulent inducement, is without binding force or effect, and transactions involved in original suit are not *res judicata.*

3. FRAUD—EVIDENCE.

Evidence *held,* to present a preconceived plan of fraud on part of individual defendant to secure plaintiffs' property where he, a man who had studied law and had broad business experience while they were inexperienced and apparently gullible, secured their property under a false representation that he would give them a half interest in a subdivision development when he had no intention of so doing, but planned to give them as little

interest therein as possible and make false and excessive charges against the development, and where he immediately divested himself of title to property conveyed to him by plaintiffs and used proceeds largely for his own use.

4. JUDGMENT—EQUITY—MONEY DAMAGES—CANCELLATION.
    Decree in part for money damages is justified by record where court is unable to grant full relief by way of cancellation and restoration in suit to set aside conveyances of real estate on ground of fraud.

5. SAME—ESCROW—NOTICE.
    Claims of rights by defendant's grantees and his attorney in escrow agreement, entered into incident to reconveyances of portion of plaintiffs' property, made with full knowledge of plaintiffs' rights *held,* properly disregarded in decree of circuit court.

Appeal from Muskegon; Vanderwerp (John), J. Submitted October 4, 1933. (Docket No. 44, Calendar No. 37,060.) Decided December 5, 1933.

Bill by Carl Venske and another against Robert D. Smith, Alberta Smith, Manor Development & Investment Company, Lakeside Development Company, Oak Park Manor Holding Corporation, Sol G. Cohan, Betty Cohan and Alexis J. Rogoski to set aside conveyances of real estate. Decree for plaintiffs. Defendants appeal. Affirmed.

*A. S. Hinds,* for plaintiffs.

*Alexis J. Rogoski* (*Cross, Foote & Sessions,* of counsel), for defendants.

NORTH, J. In their bill of complaint plaintiffs seek to have set aside conveyances of real estate to defendant Robert D. Smith or to companies which he organized and controlled and a money decree for the value of such of the properties as have been disposed of by Smith. The relief is sought on the

ground of alleged fraud and deceit. The various defendant companies are organizations controlled by defendant Robert D. Smith, and the connection with other individual defendants with the subject-matter of the litigation will be hereinafter indicated. In the circuit court plaintiffs had decree and defendants have appealed. The defendant Robert Smith was engaged in the business of laying out and developing various real estate subdivisions and various other enterprises. Plaintiff Venske, prior to July, 1930, had been employed in factory work and had conducted a garage business on his own account. He and his wife had acquired several parcels of real estate of substantial value. Venske had previously bought some lots of Smith in one of the subdivisions which the latter was then promoting. In this way Venske became somewhat interested in Smith's operations and appears to have been attracted by what seemed to be an easy way of making money in real estate transactions. In 1930 Smith was contemplating the purchase and development of a 40-acre tract known as the Southland farm which was a short distance outside of the city limits of Muskegon. Negotiations were entered into between Venske and Smith which resulted in the plaintiffs conveying to Smith a residential piece of property described as lot 5 and part of lot 6 of Pomona Grove. In the transaction this property was taken by Smith at an agreed valuation of $5,500 for which the plaintiffs were to have substantially a half interest in the Southland Farm Development enterprise. This activity was to be carried on by a corporation to be thereafter formed and in which the plaintiffs were to have such a proportion of the stock as would represent their interest. While the testimony is not as full and convincing as might be desired, it fairly

appears that this transaction was entered into by plaintiffs with the understanding that Smith would finance the undertaking to a like extent. Later there was disagreement because it was ascertained that of the capital stock of the proposed corporation in the amount of $50,000 Smith was willing to turn over to plaintiffs only $11,000; and this $11,000 of the capital stock was not only in satisfaction of the Pomona Grove property which Smith had received but also in satisfaction of other pieces of property which in the meantime plaintiffs had conveyed to Smith for which they understood they were to receive $5,500 of the capital stock of the proposed corporation. On August 5, 1930, plaintiffs filed their bill of complaint, and an amended bill of complaint was filed August 25th. Without going into detail, plaintiffs charge that the whole transaction was planned by Smith to defraud plaintiffs; in fact, that defendant Robert D. Smith neither had the ability nor intention of carrying out his part of financing the development of the Southland farm; and that he did not use the proceeds of the property conveyed to him by plaintiffs for the purposes of this development; further, that he paid only $200 on the purchase price and small amounts incident to the expenses of platting the subdivision and improving the same and that:

"The said Robert D. Smith, instead of using the moneys derived from the sale of the premises described * * * for the purposes for which these plaintiffs deeded the same to him, and instead of taking steps to form said corporation or partnership (at least prior to the filing of the original bill of complaint herein), has devoted the moneys derived from the sale to purposes of his own, and has utterly failed, neglected and refused to use such

moneys· for the purposes intended by the parties hereto, and has embezzled and fraudulently disposed of said moneys, and wrongfully converted the same to his own use.''

A subsequent bill and an amended bill were also filed by plaintiffs. In this latter litigation plaintiffs seek on the ground of alleged fraud to have set aside and to be relieved from a settlement of the previous litigation entered into between them and defendant Robert D. Smith. Subsequently there was consolidation of the suits. They were heard in the circuit as one and have been so brought to this court on appeal. Appellants stress the claim that the settlement above referred to forecloses inquiry as to the merits of plaintiffs' claims made in the original suit. Obviously this contention is not tenable if the settlement was procured by fraud as alleged by plaintiffs. This presents the first question for determination.

We think the record conclusively shows that the settlement was procured by fraud in the manner hereinafter briefly indicated. Smith approached plaintiffs relative to an adjustment of their differences. He made very material concessions to them and incident to the settlement agreed to deed to plaintiffs and they agreed to accept conveyances of eight lots in one of Smith's subdivisions. In the meantime Smith had succeeded in bringing· to the attention of plaintiffs that one O'Leary was very desirous of purchasing these eight lots for an industrial site, the property being adjacent to a railroad siding. In this record Smith discloses that O'Leary's real name was Heffron. The man called O'Leary saw plaintiffs and assured them of his desire and ability to purchase the lots for $2,000. With this inducement plaintiffs agreed to accept

from Smith a conveyance of the eight lots as a part of the agreed settlement. As soon as the settlement was consummated O'Leary vanished and nothing further has been heard from him regarding his desire to purchase the eight lots. Plaintiffs' contention is fully justified by the record that the incident just above recited was fraudulently framed by Smith to induce the settlement. Under the circumstances it is without binding force or effect.

As compared with Smith's education along legal lines and his broad experience in business transactions, plaintiffs were decidedly inexperienced and apparently gullible people. We think it unnecessary to detail each step in the development of the transactions of which plaintiffs complain as disclosed by the testimony in this case. From a careful consideration of the record we are convinced that defendant Smith preconceived a plan to secure plaintiffs' Pomona Grove property under a false representation that it would give them ultimately a half interest in the Southland farm development, and that Smith would carry the other half of the financial obligation, that at the time Smith had no intention of so doing. On the contrary he was then planning deliberately to secure as much property as possible from plaintiffs; and by means of the corporation to be later formed and in which he would give plaintiffs as little interest as they could be induced to take for their property, also by the further means of making false and excessive charges against this development enterprise, Smith would fraudulently possess himself of practically all of plaintiffs' property. The accomplishment of this fraudulent purpose was well under way at the time the first suit was started. Subsequent to the Pomona Grove transaction Smith secured from plaintiffs other par-

cels of property. His method of immediately dispossessing himself of title to such properties as he received from plaintiffs is, to say the least, suspicious. We think it also appears from this record that instead of using the proceeds of such properties for the purposes for which he had said they were to be used and which representations were made to induce plaintiffs to part with their property, Smith carried out his previously conceived fraud by appropriating such moneys to his own use. In his attempt to account for the use of such moneys at the hearing Smith made a showing in which he finally admitted there were included various charges which should not have been so included, and there were also substantial items of money paid by Smith to his mother-in-law, to his wife, in satisfaction of his own personal accounts, and in various other ways which do not appeal to us as being worthy of credence, notwithstanding Smith's claim that many of these items were charged back against him incident to his salary account. This subsequent conduct on the part of defendant Smith tends strongly to sustain plaintiffs' claim that from the outset he had a preconceived plan of defrauding them of their property.

Because Smith had disposed of the Pomona Grove property the trial court was unable to grant full relief by way of cancellation and restoration. To the extent possible under the record the decree in the circuit court provides for reconveyance of plaintiffs' property. The decree also provides for damages sustained by plaintiffs in consequence of Smith's fraud in the sum of $6,890. For this amount plaintiffs are given a lien upon the Southland farm property, subject, however, to a prior mortgage of Mr. Southland. Granting of this relief to plaintiffs is justified by the record.

There is no merit to the claim of appellants Cohan and Rogoski that the circuit court disregarded their alleged rights in an escrow agreement entered into incident to reconveyances of a portion of plaintiffs' property in that it deprived such appellants of security for payment to them of certain indebtedness by defendant Smith. This security, if it was such, was incident to the payment of past indebtedness, and it was obviously accepted with full knowledge on the part of the parties concerned of plaintiffs' alleged rights in such property. Appellants Cohan and Rogoski were not innocent holders of rights without notice of plaintiffs' claims in the litigation pending relative to the property in which these particular appellants assert a right.

The decree entered in the circuit court is affirmed, with costs to appellees.

McDONALD, C. J., and WEADOCK, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.