MICHIGAN TRUST CO. *v.* FLANAGAN.

1. BILLS AND NOTES—DEFENSES—MUTUAL MISTAKE—SUBSEQUENT ORAL AGREEMENT.

In action brought on renewal promissory note by indorsee president of corporate payee, maker was properly allowed to interpose defense of mutual mistake in the execution of settlement agreement pursuant to which original note had been given and defense of subsequent oral amendatory agreement, where litigants stand in position of original parties to the transaction, no innocent third parties are involved and testimony discloses nothing working estoppel as a matter of law or constituting a waiver.

2. SAME—LACHES—WAIVER—MUTUAL MISTAKE.

Evidence *held*, to show that maker of promissory note given pursuant to settlement agreement between parties engaged in logging a tract of timber was not, as a matter of law, estopped by laches or that he had waived defense of mutual mistake.

3. SAME—RENEWAL NOTES—DEFENSES—DISCOVERY OF MUTUAL MISTAKE.

Giving renewal notes did not change legal aspect of case so far as interposition of defense of mutual mistake in action on promissory note where maker did not learn of facts disclosing same until after renewal note sued upon had been given.

4. CONTRACTS—SETTLEMENT AGREEMENT—MUTUAL MISTAKE.

Settlement agreement resulting from mutual mistake is no more binding than an original contract so procured.

5. BILLS AND NOTES—DEFENSES TO RENEWAL NOTES—SUBSEQUENT ORAL AGREEMENT.

· Record in action on promissory note given pursuant to settlement agreement resulting from mutual mistake *held*, to contain evidence tending to sustain defense that said agreement had been amended by subsequent oral agreement which, as between litigants, was as much a defense to renewal note as to original.

6. SAME—MUTUAL MISTAKE—SUBSEQUENT ORAL AGREEMENT—ISSUES OF FACT.

> Evidence in action on renewal promissory note given pursuant to settlement agreement *held*, to raise issues of fact as to question of mutual mistake and as to an alleged subsequent oral agreement.

Appeal from Dickinson; Bell (Frank A.), J. Submitted January 17, 1934. (Docket No. 102, Calendar No. 37,533.) Decided April 3, 1934.

Assumpsit by Michigan Trust Company, administrator of the estate of Philo C. Fuller, deceased, against John J. Flanagan on promissory notes. Verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Carl O. Bay* (*Harry K. Bay,* of counsel), for plaintiff.

*Derham & Derham,* for defendant.

NORTH, J. This is a suit upon a renewal of a promissory note in the sum of $11,000, dated October 10, 1928, payable to the order of the Norton Lumber Company one year after date. Another note given for an interest instalment is also involved. The principal note was signed by defendant, John J. Flanagan and by H. A. Newkirk. On the back of the note there is an indorsement making it payable to the order of plaintiff, Philo C. Fuller. On trial before a jury plaintiff's right to recover was challenged on the ground that there was mutual mistake in the execution of the note of which the one in suit is a renewal which mistake resulted in failure of consideration, and also that by reason of a subsequent oral agreement defendant was entitled to credit on the note for certain personal property in

an amount sufficient to satisfy the obligation. Defendant had verdict and judgment, and plaintiff has appealed.

The following facts are pertinent to the questions presented by this appeal. In October, 1922, John J. Flanagan and Dr. H. A. Newkirk, operating as partners, purchased timber in northern Michigan from the Norton Lumber Company. Briefly this purchase covered 18,000,000 feet of timber at a price of $7 per thousand, with a down payment of $25,000. Defendant and his partner began logging operations and continued such until the latter part of 1925. During the course of operations, in accordance with the purchase contract, the partners undertook to pay the $7 per thousand on the amount of logs shipped or ready for shipment from month to month. The Norton Lumber Company seems to have been owned or at least largely controlled by Mr. Philo C. Fuller and Mr. William C. Anderson, the former being president and the latter secretary and treasurer. The amount due on the logging contract was ascertained from month to month by Mr. Anderson, an expert accountant, checking the partnership books and ascertaining therefrom the amount of logs shipped or ready for shipment. The partnership evidently fell in arrears in making these payments. In April, 1926, the parties met and discussed settlement. At that time Fuller, Anderson and Newkirk checked the books kept by the partnership. They reported to defendant Flanagan that the books showed an indebtedness to the Norton Lumber Company of $20,000. Flanagan testified that this alleged indebtedness pertained only to the logging operations. Aside from this indebtedness the partners had also purchased from the Norton Lumber Company a logging equipment for which the partners

had given to the company two promissory notes, one for $9,000, the other for $8,000. On April 29, 1926, a settlement agreement was reached, reduced to writing and signed by the respective parties. It provided that in full settlement of the Norton Lumber Company's claim against the partners the latter should give to the former a note in the sum of $11,000 dated April 10, 1926, and payable 18 months thereafter, with the privilege of renewal for an additional year. The $9,000 note and the $8,000 note given for the logging equipment were to be cancelled. The settlement agreement also provided that the partners should execute a bill of sale to the Norton Lumber Company for all the personal property then at the place of the logging operations. The $11,000 note was not only renewed for the additional period of one year, but it was renewed a second time and this second renewal is the note in suit.

As stated above, the note given to the Norton Lumber Company was indorsed to Philo C. Fuller. After suit was instituted thereon Mr. Fuller died and the suit is prosecuted by the administrator of his estate. Both Mr. Anderson and Dr. Newkirk are also deceased.

As noted above, the defenses submitted to the jury were mutual mistake and a subsequent oral agreement. Appellant contends that the evidence does not sustain either the alleged mutual mistake or the claimed subsequent oral agreement. But appellant presents as a primary question for review the following:

"In a suit upon a renewal note, the original of which was executed in accordance with the terms of a settlement agreement, can the defendant interpose the defense of mutual mistake in the execution of said agreement and the defense of a subsequent oral agreement amending it?"

Under the facts here involved we think the trial judge correctly held that each of these defenses was available to defendant. The respective litigants stand in the position of original parties to the transaction. No innocent third parties are involved. The testimony discloses nothing which works an estoppel as a matter of law or constitutes a waiver. The undisputed testimony is that it was not until after the last renewal note was given that defendant learned of the facts relied upon as disclosing the mutual mistake. Appellant points out that such facts were at all times ascertainable from the books of account in defendant's possession and asserts that therefore defendant should be charged with actual knowledge as a matter of law. But this contention ignores material facts disclosed by the record. Plaintiff's associate, Mr. Anderson, was an expert accountant, and during the course of the logging operations he inspected defendant's books from month to month and ascertained the amount to be paid by defendant and Dr. Newkirk. The partners seemed to have accepted Anderson's statements and payments were made in reliance upon his computations. Finally, at the time of the settlement, Anderson in conjunction with Mr. Fuller and Dr. Newkirk inspected the books of account and reported to defendant that the partners owed on the account about $20,000. Defendant testified that at the time he signed the settlement agreement he relied upon Anderson's representation that the books showed an indebtedness of $20,000. There is testimony that instead of $20,000 indebtedness on the logging operations the books disclosed only $4,672.77. As before noted, this fact was not known to defendant until after the last renewal note was given. Defendant testified he was not a bookkeeper but that he had more particularly the charge of the logging end of the enterprise in

which these partners were engaged. As bearing upon the question of mutual mistake, appellant asserts that the reported indebtedness of $20,000 covered both the logging operations and the amount due from the partners to the Norton Lumber Company incident to the purchase of the logging equipment.

With the foregoing facts in evidence, it cannot be said as a matter of law that the defendant was estopped by laches or otherwise, or that he had waived the defense of mutual mistake. As to the defense of mutual mistake the legal aspect of the case was not changed by giving renewal notes. *Anderson* v. *Engard,* 236 Mich. 221; *New Jersey Title Guaranty & Trust Co.* v. *McGrath,* 246 Mich. 553, 562. The rights and remedies of the respective parties were the same as though the suit had been brought on the original note. Nor are such rights and remedies affected by the fact that the note was given incident to a settlement between the parties. A settlement procured by fraud or resulting from mutual mistake is no more a binding settlement than is an original contract consummated through fraud or mutual mistake a binding contract. *Venske* v. *Smith,* 265 Mich. 44.

"A contract whereby the parties agree that it is made 'in full settlement of all matters between them' is conclusive of all claims existing prior to such agreement, *in the absence of any showing of fraud, concealment or mutual mistake.*" *Brevoort* v. *Partridge* (syllabus), 156 Mich. 359.

Nor is there any valid legal objection under the facts here involved to urging as a defense to the suit on this renewal note that there was a subsequent oral agreement in accordance with which the makers of the note were to be given credit thereon. The

circumstances surrounding this defense are stated in the charge of the court as follows:

"That after that contract was written the parties agreed that Flanagan and Newkirk should have credit for the fair value of the logging outfit which was to be turned over; it having been previously understood by all of them that Flanagan and Newkirk owed the lumber company $20,000. In other words, that if the logging outfit should be fairly worth more than the difference (between the $11,000 note) of $9,000, it should be credited on the note; and it is the claim of Mr. Flanagan that this outfit was worth some $17,000 or $18,000. And he claims that the excess over the $9,000 should be credited upon this note."

The record clearly discloses testimony tending to sustain the above outlined defense. As between these parties it was as much a defense against the renewal note as it would have been against the original note. Appellant's counterclaim is that there was no subsequent oral agreement but instead that the settlement agreed upon in writing included turning over to the Norton Lumber Company the personal property used in the logging operations. On this phase of the case defendant testified that it was agreed the Norton Lumber Company "would find out more about the personal property" and would give credit for it; and further that he and his partner gave the $11,000 note with the understanding that they "were to be given credit or allowance on the personal property later." There was testimony of other witnesses corroborating defendant in this regard. Evidence was received of the value of the property turned over. Under defendant's theory he was entitled to credit on his indebtedness regardless of whether such indebtedness was evidenced by the original note or a renewal note.

It would not be helpful to further detail the testimony; but the record is amply sufficient to present an issue of fact both as to the question of mutual mistake and as to the alleged subsequent oral agreement. The circuit judge was correct in so holding. Other questions suggested in appellant's brief would not affect decision herein and need not be discussed.

The judgment entered in the circuit court is affirmed, with costs to appellee.

NELSON SHARPE, C. J., and POTTER, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.