Paul T. **PETERSEN**, Plaintiff,

v.

**NEW YORK LIFE INSURANCE COMPANY, Defendant.**

**No. 98–CV–71447–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

March 31, 2000.

Francis C. Flood, Charles J. Gerlach, James C. Steffl, Steffl & Flood, Troy, MI, for plaintiff.

Neill T. Peters, Michael J. Nolan, Nolan, Kohl, Harris, Metamora, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This matter is before the Court on the parties' cross-motions for summary judgment. Responses were filed and a hearing held on the matter.

## I. FACTS

The facts in this case are not in dispute. In a class action lawsuit entitled *Willson v.* *New York Life Insurance Co. and New York Life Insurance and Annuity Corp.,* Index No. 94/127804 (Sup.Ct.NY.Co.) ("Willson"), the court entered a Final Judgment on February 1, 1996 based upon a settlement agreement entered into by the parties. There is no dispute that Plaintiff is a member of the class. On April 2, 1999, Plaintiff Paul T. Petersen filed a two-count Complaint against Defendant before this Court alleging breach of contract based on the settlement agreement entered in the *Willson* class action and violation of the Michigan Consumer Protection Act.

Plaintiff, a 73–year old male with cancer, purchased two insurance policies with Defendant in late 1995 or early 1996, policy numbers 38986569 and 42099899, each with death benefits of $500,000.00. As part of the settlement agreement, a claims review process was established where class members would submit a claim. The claim would then be reviewed by Defendant and an offer of settlement would then be made to the claimant.

Plaintiff submitted his claims regarding both policies. Plaintiff received letters from the New York Life Class Action Claim Review Team stating that they had received his claim and that the review process would take approximately six to eight weeks. On November 14, 1997, Plaintiff received a letter from the New York Life Class Action Claim Review Team offering to refund Policy Number 38986569 at $400,168.07. No calculation detail was provided with the letter. Plaintiff received a similar letter regarding Policy Number 42099899 where Defendant offered a refund in the amount of $186,588.92. No calculation detail was provided with that letter.

On December 3, 1997, Plaintiff signed the Acceptance of Award forms which accompanied the Award Letters. Plaintiff elected to accept both awards offered by the Claim Review Team. On January 7, 1998, Plaintiff received a letter from the New York Life Class Action Claim Review

Team stating that in accordance with the award which Plaintiff had accepted, a check in the amount of $186,599.92 for Policy Number 42099899 was issued and enclosed with the letter.

On January 22, 1998, the Claim Review Team sent a letter requesting Plaintiff to sign a "Revised Acceptance of Award" claiming that they had made a mistake in calculating the amount of the refund as to the Policy Number 38986569. The Claim Review Team acknowledged that Plaintiff had already accepted the original award but still requested that plaintiff acknowledge the error made by Defendant. The revised refund amount was $39,552.09. No calculation detail was provided with the Revised Acceptance of Award letter. Plaintiff claims he did not acknowledge any alleged mistake. Plaintiff filed the instant suit to enforce the agreement agreed to by Defendant with regard to Policy Number 38986569.

There is no dispute that a claims review process is provided under the settlement agreement. The alternative dispute resolution ("ADR") process includes an initial assessment of all claims by the Claim Review Team. (Sett.Agrmt.¶ B.4(a)(1)). The Claim Review Team attempts to complete its evaluation of a claim within 150 days after receipt of the claim. (Sett.Agrmt.¶ B.4(a)(4)). If the Claim Review Team determines a claim to be sufficient, it will offer the claimant the relief specified in Exhibit A of the agreement, unless the claimant and defendants mutually agree on some other form of relief. (Sett.Agrmt.¶ B.4(a)(5)). The Claim Review Team's decision is binding on defendants. (Sett.Agrmt.¶ B.4(a)(6)). A claimant may request arbitration if the claim is denied or if the claimant does not agree with the nature of the relief awarded. (Sett.Agrmt.¶ B.4.(a)(7)). Exhibit A of the settlement agreement provides for the scoring and evaluation of the claims. (Sett.Agrmt., Ex. A) The settlement agreement further provides that "[n]othing in this Release shall preclude any action to enforce the terms of the Settlement Agreement, including participation in any of the processes detailed therein." (Sett.Agrmt.¶ H.6.) There is no provision in the settlement agreement regarding miscalculations after a claimant has agreed to the initial award offered by the Claim Review Team.

## II. ANALYSIS

### A. Standard of Review

Rule 56(c) provides that summary judgment should be entered only where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548. A court must look

to the substantive law to identify which facts are material. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### B. *Breach of Contract/Count I*

#### 1. *Injunction Provision under the Settlement Agreement*

■ The parties agree that the settlement agreement is at issue in this case. Defendant argues that the injunction provision of the settlement agreement prohibits Plaintiff from filing a suit to enforce the settlement agreement at issue. The injunction provision in the settlement agreement in part states as follows:

H. *RELEASE AND WAIVER, AND ORDER OF DISMISSAL*

1. *Release.* Effective as of the Final Settlement Date, Plaintiffs and all Class Members hereby expressly agree that they shall not now or hereafter institute, maintain or assert against the Releases, either directly or indirectly, on their own behalf, on behalf of the Class or any other person, and release and discharge the Releasees from, any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, whether based on federal, state or local statute or ordinance, regulation, contract, common law, or any other source, that have been, could have been, may be or could be alleged or asserted now or in the future by Plaintiffs or any Class Member against the Releases in the Actions or in any other court action or before any administrative body (including any state Department of Insurance or other regulatory commission), tribunal or arbitration panel on the basis of, connected with, arising out of, or related to, in whole or in part, the Released Transactions and servicing relating to the Released Transactions ...

(Sett.Agrmt.¶ H.1). Released Transactions is defined under the Settlement Agreement as:

"Released Transactions" means the marketing, solicitation, application, underwriting, acceptance, sale, purchase, operation, retention, administration, or replacement by means of surrender, partial surrender, loans respecting, withdrawal and/or termination of the Policies or any insurance policy or annuity sold in connection with, or relating in any way directly or indirectly to the sale or solicitation of, the Policies.

(Sett.Agrmt.¶ A.1(ay)). Paragraph H.6 of the Settlement Agreement provides:

Nothing in this Release shall preclude any action to enforce the terms of the Settlement Agreement, including participation in any of the processes detailed therein.

(Sett.Agrmt.¶ H.6)

Plaintiff is claiming a breach of contract based on the settlement agreement and is not claiming anything regarding the underlying action. Paragraph H.6. of the settlement agreement provides Plaintiff the right to bring a breach of contract claim on any of the terms of the settlement agreement, including the participation in the process outlined in the settlement agreement. The injunctive provision does not apply to Plaintiff's claims in this action.

#### 2. *Arbitration Procedures under the Settlement Agreement*

■ Defendant claims Plaintiff has the ability to bring his concerns through the alternative dispute resolution process under the settlement agreement. Under the settlement agreement, the initial assessment of all claims is made by the Claim Review Team. (Sett.Agrmt.¶ B.4(a)(1)). After its evaluation and final decision, the Claim Review Team then notifies the claimant in writing of its decision and the claimant's right to obtain arbitration of *either a denial or the nature of the relief awarded by the Claim Review Team.* (Sett.Agrmt.¶ B.4(a)(2), (5), and (7)). The claimant then has 35 days to obtain review of the award. (Sett.Agrmt.¶ B.4(c)) The Claim Review Team forwards the request for review to the Arbitration Panel. (Sett.Agrmt.¶ B.4(c)). In this case, Plaintiff's claim was not denied and Plaintiff did

not dispute the Claim Review Team's award. The arbitration procedure was not triggered in Plaintiff's case. There is no provision in the settlement agreement allowing the Claim Review Team to review an award after that award has been offered to and accepted by a claimant. The arbitration procedure is inapplicable to Plaintiff's claims.

### 3. *Mutual Mistake*

 Settlement agreements are governed by the legal principles applicable to contracts. *Hisaw v. Hayes*, 133 Mich.App. 639, 350 N.W.2d 302 (1984). Where an agreement is obtained by mistake or fraud, the court, in equity, may reform the agreement to that originally intended by the parties, or rescind the agreement and declare it void *ab nitio*. *Lenawee County Board of Health v. Messerly*, 417 Mich. 17, 331 N.W.2d 203 (1982).

 Defendant claims that there was a mutual mistake made by the parties because the award at issue was calculated by mistake. *Michigan Trust Co. v. Flanagan*, 266 Mich. 527, 254 N.W. 194 (1934). Plaintiff claims that the mistake in the calculation was not mutual but unilateral, if any mistake was made. Plaintiff cites to New York law that mistake, to be available in equity, must not have arisen from negligence, where the means of knowledge were easily accessible. *Da Silva v. Musso*, 53 N.Y.2d 543, 551, 444 N.Y.S.2d 50, 428 N.E.2d 382 (1981), quoting *Grymes v. Sanders*, 93 U.S. 55, 23 L.Ed. 798 (1876) and *Surlak v. Surlak*, 95 A.D.2d 371, 466 N.Y.S.2d 461, 471 (2nd Dept.1983). Plaintiff argues that mistake is not available in equity as to Defendant because Defendant was merely negligent in calculating the award. Plaintiff claims that the settlement agreement provides that Defendant is bound by the award.

In reviewing the settlement agreement at issue, it expressly states that the Claim Review Team decision is binding on Defendant. (Sett.Agrmt.¶ B.4(a)(6)). There is no provision in the settlement agreement that provides for any revision if the Claim Review Team decision was a mistake. Exhibit A of the settlement agreement does provide for the factors which the Claim Review Team should follow in order to make its award. However, there is nothing in Exhibit A or the ADR provision of the settlement agreement which gives the claimant any decision making power as to the award given. The claimant may have a representative involved in the calculation procedure but in the instant case, Plaintiff was never provided with any calculation documentation as to how the Claim Review Team processed his claim. When Plaintiff received his letter of award from the Claim Review Team, he had no way of knowing how the calculation was made. Pursuant to the settlement agreement, he accepted the offer made by the Claim Review Team instead of exercising his option to go through the arbitration process. Defendant has not provided any New York law contrary to the law provided by Plaintiff that a unilateral mistake cannot be reformed if the mistake was based on a party's negligence.

There is no dispute that the settlement agreement provided that Defendant would have 150 days to review any claims. There is no dispute that it took Defendant about 270 days to process the claim. Defendant had sufficient time to review the claim and make the calculations. Defendant's submission of the affidavit of Virginia Martello admits that a mistake had been made in calculating one of the policies. However, because there is no provision in the settlement agreement which allows the Defendant to revise its award letter if a mistake is made after a claimant has accepted the award, Defendant is bound by its initial award as accepted by Plaintiff. As previously indicated, the settlement agreement expressly states that Defendant is bound by the Claim Review Team's award. Defendant has not submitted any evidence that its unilateral mistake was other than negligence on its part. Under New York law, as cited by Plaintiff, Defendant is not entitled to relief from such a mistake. It is noted that Defen-

dant only cites Michigan cases. Defendant has not disputed that New York law applies. Given that the settlement agreement was entered into in accordance with New York law and the Judgment entered in the class action suit was from a New York court, New York law applies.

### C. *Michigan Consumers Protection Act/Count II*

Defendant moves for summary judgment on Count II. Defendant claims that because the contract at issue is a settlement agreement based upon a class action suit, the Michigan Consumers Act does not apply. Plaintiff did not respond to this argument. It appears that Plaintiff is abandoning his claim under the Michigan Consumers Act, Count II of the Complaint. He does not move for summary judgment on this count.

Based upon a review of the Michigan Consumers Act, Plaintiff has not factually supported the claims under this Act. Count II will be dismissed.

### III. *CONCLUSION*

For the reasons set forth above, the Court grants Plaintiff's Motion for Summary Judgment on the breach of contract claim and dismisses the Michigan Consumer Protection Act claim.

Accordingly,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED on the breach of contract issue only as more fully set forth above and DENIED as to the Michigan Consumers Protection Act Claim **(Docket No. 17, filed March 15, 1999).**

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment is GRANTED on the Michigan Consumers Protection Act claim and DENIED as to the breach of contract claim **(Docket No. 18, filed March 15, 1999).** Count II of the Complaint is DISMISSED.

IT IS FURTHER ORDERED that Defendant's Motion to Compel Answers to Interrogatories and Document Production **(Docket No. 23, filed April 19, 1999)** is MOOT.

IT IS FURTHER ORDERED that Defendant's Motion to Amend the Witness List **(Docket No. 31, filed May 11, 1999)** is MOOT.